Mr. Wood, whenever you're ready. I didn't even try to pronounce the name. Thank you, Your Honour. May it please the Court. My name is Keith Wood, and together with my colleague Samuel Sussman, I represent the appellant KPN in this appeal. There were several errors by the Board that resulted in a final written decision that is not supported by substantial evidence or the law. In this oral argument today, I will highlight three aspects of the Board's decision that we believe most clearly show there were errors made by the Board. First, the Board in its decision clearly and explicitly misread Claim 33, and in its decision, the Board misstated the claim language of that claim as being the same as that of Claim 31. The Board clearly did not appreciate a key difference in claim language between Claims 31 and 31. And we're talking about if and responsive to? Yes, Your Honour. And you in your brief said responsive to are different words from the word if. Yes, that's absolutely correct, Your Honour. And they have clearly their own separate meaning. That's right, Your Honour, yes. But then you didn't give us the punchline of what is in fact that separate meaning. What could it possibly mean other than if? Well, yes, Your Honour. We the Board applied are very different terms. They're plainly different. If I say, if I give you a sentence like if it's raining outside, my windows are closed. That's one statement. Let's say I say responsive to it raining outside, I close my windows. You'd expect something different to happen when it starts raining because I'd respond to the rain. You'd see someone get up and close the window. And the same thing applies in this case. We believe that the language responsive to makes even more of a difference with respect to the ob-hand reference. Ob-hand does nothing responsive to the good till time in making an access decision. And so yes, the differences in language between the two terms are plain, Your Honour. Okay, so if we agree with the Board that Claim 31 is unpatentable, then what's the daylight in your view that would, that we, where we could find Claim 33 is okay? Yes, Your Honour. So, so although we believe that Claim 31 is patentable, there is daylight between the two and the difference is in that responsive to. So the, there's a response, sort of like a causal relationship between the input, the thing you're getting and what you do in response. So in, in the ob-hand reference, this good till time is used... Can we just go back to the claims? Yes. Claim 31 says you deny the terminal access if the access request is received within the time period, right? Yes, Your Honour. Claim 33 says denying the terminal access responsive to the access request being received within the time period. Yes, Your Honour. What's the daylight? Because I'm going to be honest, I see none. It's, it's, it's the act of this, it's the responding to. So if has a sense of sort of like if a condition is satisfied. So this condition may or might be satisfied if, if there's no responding, but it's this active, it's this responsive to that means that there's a causal relationship between receiving the request and then taking the act of denying it. So you, so you'd expect to see even more from this claim than you would from claim 31. And we see this actually in the ob-hand reference and the specifics of the reference. So we have figure 9B is what is relied upon by the, the appellee and is relied upon by the board in its decisions, the evidence that it has. And there's this good till time in it. And the good till time is, is a timestamp to do with the validity of some data in a table related to a geographic corridor. And that timestamp, it's just a validity time for this data, is not used in the access decision when you're deciding whether to give access to the network. So this claim talks about denying access responsive to, and that good till time is not at all involved in that. And the board didn't have any evidence of that. And so that's... The board found otherwise though. The board found that the good till time is necessarily and logically part of the decision-making process and whether to grant... Yes, that's correct. ...the request for access. Thank you. Thank you. Yes, the board did decide that. And we just... Because it matters when the request is being made and for a given corridor and for a given subscriber, you know, what, what class is the subscriber? What corridor are we in? What's the good till time? You need all three of those elements in order to make a decision, do you not? Well, actually, no, your honor, that's not the way that the Obhan reference makes decisions about access. What Obhan does is just look at the class, just look at the access class for this geographic corridor and the, and the access class of the terminal and, and say, is that a high enough class? That's, that's all it does. So the, the good till time is sitting out there at some time, one single timestamp saying, you know, next time you're updating, you might update that table. So it's... The corridor is only valid up until the expiration of the good till time, right? Yes, that's true, but then the terminal might move. So, so the terminal might move to another geographic corridor. So that good till time just has nothing to do with... Did you make that argument to the board? This switching corridor idea? Because I didn't see it. Well, your honor, it's, it's implicit in the board's decision where they're basing their decision based on, on figure 9B, the minimum access class being the same as, you know, comparing the minimum access class, and they say that access denied if, if you're below the minimum access class. And, and again, your honor, the, the way that Obhan works is by looking only at the minimum access class to decide access. It just isn't, there's no, there's no evidence that that good till time is consulted. The, the board simply had no I realize we can't, we can't sit here and re-litigate the facts of this IPR. This is a warning to all the lawyers in the room. You know, we, this is a federal appellate court, and we're, we're looking for legal errors, we're, we're looking for fact findings that are just totally unreasonable. Yes. And, and in the end, everything else is really within, you know, the scope of, of the fact finders duties, the board tribunal to make the call on a lot of these nitty gritty items that you're asking us to confront and get on our elbows and knees and walk through or crawl through. Yes, thank you, your honor, and we believe that this, this first error relating to response to is one of those, because you have the board in its decision actually saying that claim 33 says if, and it doesn't. That's an error. The board didn't even get to analyze the plain and ordinary meaning of responsive to. So the board simply misread the claim. Because of this decision should be remanded so that the board can look at what the plain and ordinary meaning of responsive is, responsive to, relative to the op-ed reference. So that's, that, your honor, we would submit is an error. But is there somewhere in your briefing where you clearly explained what's the daylight between responsive to and the word if in claim 31 and why therefore that makes a difference. Yes, your honor. Therefore it's not harmless error, it's harmful error. Yes, thank you, your honor. So on this question if you look at appendix 1498 KPN did argue relative to what responsive to means. KPN quoted the claim language responsive to. We analyzed how Obhan did not teach it. And this is contrary to what Apelli said in his brief. Apelli said, well, KPN treated those two terms the same. That's not actually so. If you look at appendix 1498 we analyze the term responsive to just under its plain meaning. We give the language and we say why it's not met in Obhan. So it's not as if we're pointing to the claim as being the same as if. And we believe that the board should also look at the actual language which says responsive to and analyze Obhan under that. Could you say something about the motivation to combine real quick. Yes. Especially the issue concerning security and granularity. Thank you, your honor. Yes. The second point which I'd like to highlight today, your honor, and in response to your honor's question. The board improperly relied on a motivation to combine the Obhan and Schatzkamer references that was not advanced by an argument of a party. In the petition the petitioner had proposed modifying Obhan with Schatzkamer to quote provide more flexibility and increase the resolution of Obhan's access control operations. However in its decision the board decided on its own motivation to quote allow for increased granularity to provide better network security while still allowing for Obhan's macro level access control methodology. This is at appendix 34. The motivation to provide better network security was not provided by the petitioner. It was provided by the board itself. First in its institution decision and then confirmed. The petition does cite security as the basis for motivation to combine. I would respectfully disagree, your honor. For the motivation to combine, your honor, the petitioner is relying upon increasing flexibility and increasing the resolution of Obhan's access control operations. This is at appendix 233. So now providing better network security was not provided by the petitioner. And the board in its final written decision actually admitted, it said that its statement quote with respect to providing better network security was not meant to be representative of a Pele's argument. Rather it was meant to supply our reasoning as to why we, the board, were persuaded that increased granularity is a sufficient reason to support the legal conclusion of obviousness. What about when the board just talks about increasing granularity at A15 as being a sufficient rationale to support the legal conclusion of obviousness and then it cites in quotes both the petition and the petitioner's expert about increasing granularity to provide finer and more specific access control. Yes, so your honor. Given the, you know, multitudes of terminals that are requesting network access. Yes, your honor. So increasing granularity is emphatically not a motivation in its own right. If you, there's no, simply no motivation to replace a simple class identifier with a list of a million terminal identifiers. Didn't your side during the oral argument in front of the patent board talk about how increased granularity could be beneficial as a possible motivation in terms of granularity? In fact, your honor, no. No. Counsel at oral argument was actually saying. I'm misreading these quotes? Yes, so if you look, turning to say appendix 4155, counsel was saying I don't think that was the argument petitioners made, but I will entertain it. And so the important thing here is that increasing granularity may or may not be a motivation for anything. In some contexts it can be a motivation, in others it is not. It might be computationally expensive. It might actually decrease security to take these million terminal identifiers and take them outside of the home location register and put them in an access block. It all depends on context, and so counsel was entertaining a hypothetical that was not an argument that petitioner made and said I think it's a bit hard for me in the abstract so I wouldn't say, so I would say I don't feel there's a motivation to combine. This is appendix 4159. So it all depends on the context with whether increasing granularity in the abstract would be a motivation to combine. And here there is no evidence that it is, and the board felt the need to supply its own reason, that essence of the motivation to combine, the why, the reason why there's a motivation to combine. The board supplied it itself to provide better network security. You're into your rebuttal time, so why don't we hear from the other side. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court, Peter Ayers on behalf of the Honorable Catherine Vidal. Let me start, if I will, with the motivation to combine, Judge Reyna, that you raised and my colleague on the other side finished with. As Judge Chen recognized, this issue like the others that they raised are reviewed for substantial evidence. Can you respond to his arguments, one, that the board, that the petition did not include granularity and the board came up with it on its own, and two, certainly, Your Honor. I think their argument is that the petition didn't rely on increased security, and we would even concede that point because the board made clear that it didn't need to rely on increased security in order to find a motivation to combine because increased granularity and the flexibility that that brings with it was sufficient, and that's at APPX 34, and my friend on the other side mentioned that this is just merely insufficient, I guess because it's too generic a motivation, but he acknowledged that it all depends on the context, and what I would like is to turn the Court to that context, namely OBON, and OBON itself discusses granularity, so granularity in this context is an important consideration, and I would point the Court to APPX 1173 where describing the difference between figure 9A and 9B, it refers to fixed ACB, that's figure 9A, has a finer level of granularity and is meant for fixed services, so this is precisely the context in which granularity is important, and that is why petitioner relied on it in this case, and that motivation is clearly supported by substantial evidence, not only OBON, but Shotzkammer, and in addition, their expert relied on their expert testimony, which the Board found, so we think that there's clearly a reasonable basis for the Court, or for the Board, to have found a motivation to combine. Do you think, though, it was a bit confusing, and maybe wrong-headed for the Board to unilaterally introduce the idea of increasing network security into the rationale, when the rationale was only about increased granularity, and I assume increased granularity means customization on a terminal-by-terminal basis for deciding whether to deny a grant access for terminals. I think in hindsight, it would have been preferable if the Board hadn't gone that far. I think perhaps the Board was trying to provide this Court, to the extent it was appealed, with its reasoning and the reasonable inferences it was drawing, because what it said in its decision was that, and here is an example of how increased granularity could be beneficial. Namely, you could create a list now, essentially a blacklist, like is described in Shotzkammer, and you could provide, you know, it could be used for increased security. But I would agree it's not necessarily the model of clarity, but clearly the Board went to great lengths to respond directly to the petitioner's argument that it was relying on increased security as the motivation to combine, which it was clearly not. With respect to the first issue that my friend raised, Your Honor, I think has it exactly right that there's just no daylight between claims 33 and 31. There's no material difference between if and responsive to. Both of those limitations are merely temporal in scope and there's not a causal relationship even though it uses responsive. It's that the access request must be received within the time period. So both the if clause in Claim 31 and the responsive clause in Claim 33 do the same work in those claims and fall together. If I could just touch on the good till time. The Board just disagreed with the patent owner on its use within OBON that is clearly supported as Judge Chen recognized that all of the data in the ACB is consulted in making these deny access determinations and that's described in OBON and therefore is described or is supported by substantial evidence. Happy to answer any other questions that the Court might have. Otherwise, I'll yield back my time. Thank you.  Thank you, Your Honours. In rebuttal, I'd like to touch on a few points related to what my friend Counsel said. Your Honours, the Board in saying that increased granularity is a sufficient motivation to combine, proceeds in the following sentences to say that it was meant to supply our reasoning. And so, in fact, this is the essence of what the Board thought was the motivation to combine was this network security which was supplying its reasoning. And as far as the context, this statement that OBHAN teaches granularity, the Board did not rely on that and the Petitioner did not make that argument. So this is not an issue. Did you read A15 differently than I do? Your Honours, the Board conceded that OBHAN uses class identifiers for its access decisions. So it was conceding and Petitioner also that. A15 says the Board is finding that increasing granularity to provide finer and more specific access control, quote-unquote, is adequate rationale to support its conclusion. Yes, it makes that statement. The point to me is, to whatever extent the Board went on some kind of extracurricular journey with increased network security, it did come home and talk specifically and devote an analysis to just increasing granularity. Yes, it made that statement that increased granularity was sufficient, but it didn't provide any supporting evidence in support of that. So the essence of its motivation to combine, the reason to combine those references was this providing better network security. And we have the Board admitting that, excuse me, the Director admitting that it would be preferable if the Board didn't go in for that and that it's not the model of clarity. And regarding there being no daylight between responsive to and the term if, the Board didn't explain that language. It did not try, it did not explain responsive to. So that as well is not supported by evidence. Thank you. We thank both sides. The case is submitted.